**UNITED STATES FIDELITY AND GUAR-ANTY COMPANY, Appellant,**

**v.**

**MILK PRODUCERS ASSOCIATION OF SAN ANTONIO et al., Appellees.**

**No. 14275.**

Court of Civil Appeals of Texas.

San Antonio.

Sept. 23, 1964.

Rehearing Denied Oct. 21, 1964.

House, Mercer, House & Brock, San Antonio, for appellant.

W. W. Fowlkes, San Antonio, for appellees.

BARROW, Justice.

This is a garnishment action. The question presented is whether the garnished funds were special community property of Jean C. Moore, and exempt from liability for the debt of her husband, Guy E. Moore, under Art. 4616, Vernon's Ann.Civ.St.[1]

Appellant owned a personal judgment against Guy E. Moore and brought this action to garnish funds held by Milk Producers Association in the name of Jean C. Moore. These funds represented revenue from the April, 1962, milk runs. Jean C. Moore intervened and asserted that the funds were her special community property. After a non-jury trial, judgment was entered denying appellant any recovery against garnishee or the funds held by it.

Findings of fact and conclusions of law were filed wherein the trial court found that the funds were the special community property of Jean C. Moore. Findings were made that: the dairy herd was started as her separate property; on May 10, 1957, Guy E. Moore executed a bill of sale of his interest in the dairy business to his wife as her separate property; her disabilities of coverture were removed for mercantile and trading purposes on October 29, 1957, and she thereafter operated the dairy business as her own and kept the earnings from same in a separate bank account, to which her husband had no access. The court further found that the dairy was operated on a farm purchased by Jean C. Moore in July, 1959, in Gonzales County, as her separate property, and that the subsequent payments on the farm were made from her separate bank account. The court concluded that the funds were the special community property of Jean C. Moore, and therefore not subject to garnishment for the judgment debt against her husband.

Appellant has attacked each of these findings and urges that as a matter of law the funds were community property and were not exempt from the debt of Guy E. Moore.

The funds in the hands of garnishee were revenues from the sale of milk and were community property regardless of whether or not Jean C. Moore was operating the dairy as her separate property and estate. Art. 16, § 15, Vernon's Ann. Tex.Const; Art. 4619, Vernon's Ann.Civ.St. However, the personal earnings of the wife and revenues from her separate property are special community property and are not liable for the husband's debts. Art. 4616, Vernon's Ann.Civ.St.; Moss v. Gibbs, 370 S.W.2d 452 (Tex.1963).

There is evidence tending to show that the original dairy herd, which was bought in 1952, was the separate property of Mrs. Moore. In any event, in 1957, Guy E. Moore conveyed his entire interest in the dairy herd and dairy equipment to Jean C. Moore as her separate property. The testimony of Jean C. Moore supports the trial court's findings that Jean C. Moore's disabilities of coverture were removed and that she thereafter operated the dairy business alone and as her separate property. Guy Moore operated a truck line (out of which business the debt supporting the judgment arose) until he became incapacitated from a stroke in 1960. He took no part in the dairy operations, other than or-

1. "Art. 4616. Wife's separate property protected

"Neither the separate property of the wife, her personal earnings, nor the revenue from her separate property shall be subject to the payment of debts contracted by the husband nor claims arising out of the torts of the husband."

·dering feed on one occasion. All income from the dairy was kept in a separate bank account to which only Jean C. Moore had access.

The Gonzales County farm, where the dairy was operated, was purchased in 1959, and the deed recited that the consideration was paid by Jean C. Moore from her separate estate and the property was conveyed to her individually. The recitations of the deed established a presumption that the property was acquired as the separate estate of the wife, although a note and deed of trust securing payment of the balance was executed by both Jean C. and Guy E. Moore. Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900 (1963); Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777 (1952); Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328 (1943).

The evidence establishes that the dairy herd remained about the same size from 1957 through 1962. It was necessary, however, to replace the cows from time to time, and this was done either by the purchase of new cows or with the increase from the original herd. Also, during this period of time the dairy business was heavily encumbered and it was necessary for money to be frequently borrowed. On each occasion a note and chattel mortgage were signed by Jean C. Moore followed by the signature of her husband. The evidence is undisputed that all payments on the note given for the purchase of the farm, as well as on the various notes for operating capital, were made from the proceeds of sale of milk, and, where these were insufficient, from gifts to Jean C. Moore from her sister. Appellant urges that the foregoing evidence is such as to destroy the separate property status of the dairy business.

The special community status was never destroyed. It is seen that all revenues from the dairy were put back into same by Jean C. Moore. This would not be a mutation of the revenues so as to destroy the special community property status of the revenues. Moss v. Gibbs, supra; Hawkins v. Britton State Bank, 122 Tex. 69, 52 S.W.2d 243 (1932); 42 T.L.R. 385.

Further, the pledge of community credit by Guy E. Moore's signing various notes did not destroy the separate property status of the dairy. In Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620 (1935), the rule is set forth, that "where a spouse improves his or her separate property with the funds belonging to the community estate, the other spouse, or his or her heirs, would be entitled to reimbursement out of his or her separate property, to the extent of their share of the community funds so used, and that their claim for such reimbursement is in the nature of a charge upon the property so improved." It was further held, that "the principles of reimbursement in accounting between estates apply, without distinction, to both separate and community estates." See also: Lindsay v. Clayman, supra; Colden v. Alexander, supra; Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881 (Com.App., 1937); 30 Tex. Jur.2d, Husband & Wife, § 134.

In Armstrong v. Turbeville, Tex. Civ.App., writ dism., 216 S.W. 1101, the court recognized that, in the absence of fraud, the husband and wife may intend that the borrowed money be for the benefit of the wife's separate property, although the husband also signed the note and pledged his separate property to secure the loan. See also: Sorenson v. City Nat. Bank, Com.App., 121 Tex. 478, 49 S.W.2d 718.

The trial court properly concluded that the garnished funds were the special community property of Jean C. Moore and therefore not liable for the judgment debt against her husband.

The judgment is affirmed.